Our third and final case for the day, Jane Swinford v. Officer Joshua Santos in his individual capacity, Officer Charles Binninger in his individual capacity, 22-13675. And Mr. Baker, whenever you are ready, you have reserved three minutes for rebuttal. Mr. Baker May it please the court, my name is John Baker and I represent Jane Swinford, whose husband was killed in 2019 when he was shot by seven different police officers. This is my first appearance before this court. I know that that does not mean that you will take it easy on me, but the reason I mention that is because it's also my first appearance before any judge in this case, even though the complaint was filed in July of 2021. That becomes important to various issues in that my client was effectively cut off from access to the court with a motion to stay and an order to stay that eliminated any possibility of addressing the court on matters outside of briefs, whether that be with a planning conference, a teleconference. Jane Swinford You were faced with a motion to dismiss. Mr. Baker That is correct, Your Honor, that is correct. And I'll come back to the relevance of that in a moment. But my client respectfully submits that there are three reversible errors that were committed by the trial court. The first is the court's grant of a motion to dismiss under Rule 12b-6 based on consideration of body cam videos that were, we assert, the wrong videos. As the court knows in a qualified immunity analysis, the facts and circumstances, the totality of them, as a matter of fact, is what is necessary for the district court to properly analyze those issues and the qualified immunity was asserted by the seven officers who shot Thomas Swinford. Jane Swinford Tell me when you say the wrong videos. Drill down on that more, please. Mr. Baker Yes, Your Honor, thank you for bringing that up. Out of the seven officers that are defendants that shot Thomas Swinford, upon information and belief, without the benefit of initial disclosures or discovery, only through an records request response, we have six videos from the seven officers. So body cam videos and so, of course, showing the angles, the locations, the perspectives of those six officers and I think it is really instructive, I hope the court will find it that way too, that when a motion to dismiss was filed, there were two videos that were the six videos that were captured by those who shot Thomas Swinford, neither one of those videos was captured by any of those officers. That is what I mean, Your Honor. Jane Swinford But the two videos, I mean, they show a broad sense of the scene, we are seeing multiple officers on the videos. Tell me what of the videos do you dispute? Judge McNaughton Do I dispute? Well, first of all, great question, Judge. Thank you. The dispute that I have is based on the fact that it is a matter of record that in response to an open records request, materials were left out. Jane Swinford Okay, I get that, but we have video. The district court had video and you have not questioned the authenticity of the video and the videos are providing a broad view of the scene. So, tell me where the district court went wrong. Judge McNaughton Yes, Your Honor, so I respectfully disagree with the court about the objection to the authenticity of the videos because the motion to dismiss was filed with two videos that did not show a, they were the worst two views. One of them does not even show the shooting, the other one, the officer wearing the body cam sort of ducks down and doesn't even shoot, so you miss the important parts of what is happening and 21 days after the motion to dismiss was filed, a certificate was also filed by the defendants that allegedly authenticated the videos or, I've got to be careful using the definite article there because that's one of the things that went wrong in this case, the videos. The certificate of authenticity from Athens-Clarke County Police did not particularize authentication or details as to which videos it referred to. There was two videos initially presented with the motion to dismiss and then there was a during the pendency of the motion to dismiss, so before a decision was made, and two more videos were submitted without authentication and so the record contains several, those objections are made in briefs, the record contains several objections to the authenticity of the videos simply because there had already been omissions from the open records response and while I certainly have the opinion. How have you, I feel like you're not answering my question, how have you objected to the authenticity of the videos that have been submitted by the defendant in the motion to dismiss? I'm sorry, Your Honor, I apologize for not answering your question. The objection is, I believe there are two different objections in two different briefs in the record to the authenticity of the videos based on the fact that there was a failure on the defendant's part to provide evidence of their authenticity and my client takes the position that if they're going to try to have, you know, the court consider something at the stage before my client can engage in discovery to find facts to making an informed challenge to the video, my client takes the position that it's the defendant's job to properly authenticate the videos and that was the extent of the challenge. Did you have the videos before they provided them in response, with their motion to dismiss? Your Honor, I had an open records response before the case started that, you know, I included, you know, six videos from the seven officers who shot Thomas Swinford and there were, you know, many other videos as well. Of course, I gave those to my expert witness and that's a matter of record who then goes through and analyzes the different angles and the shot intervals of the various officers in an individualized analysis, which is what was not conducted by the trial court.  I have what they gave me in the open records and I'm not trying to split hairs at all there. I'm doing my best to emphasize to the court that they may very well be exactly what was captured that day by the officers comprehensively, but without, you know, the data, without the officer, I can't be certain without that very limited amount of discovery that what I have is authentic and that what I have is comprehensive. Has the district court responded to your objections about the authenticity of the videos? Only in its order denying, granting the motion to dismiss, referencing the four unauthenticated videos and denying the right to amend the complaint, which was the first request that was made. And the motion to amend the complaint was made because while the motion dismiss was pending, I discovered the omission of the internal affairs report that was generated when Athens-Clarke County investigated the incident. It had some extremely important admissions that were made by, for instance, the first officer, excuse me, McElveen, sorry. McElveen was the first officer who shot Thomas Wendell and Lieutenant McElveen said that he dropped him with one shot and that the gun came out of his hand and that it landed some four or five feet away from him and that he laid there motionless and that he did not appear to be reaching for the gun. Now, where the rubber meets the road of my client's contention that this case presents a jury issue on the reasonableness of the officer's actions is that at that point, there was no need, any immediate reasonable threat had abated at that moment. Okay, I've seen the video and they're all officers, the minute they were trying to talk your client or I guess your client's relative down and when he all of a sudden held up his gun and advanced and he's surrounded by officers, I've seen the video, they all start firing. So, to me, it strikes me as a bit disingenuous to say, oh, one officer fired and went to the ground, everybody knew the gun was clear and then people fired. It was a barrage at the same time occurring in the span of seconds. Well, if you're referring to what I've said as disingenuous, those aren't my words, those are Sergeant McElveen's words. I saw the video, I'm referring to my interpretation of the video. Yes, Your Honor, and when you say the video, that's what went wrong below. Which video are we talking about? Because the advantage really matters in this case, especially in regard to each of the seven officers. One of them is behind a brick wall and he can't see anything except Thomas Swinford and you can tell that he's firing at him when he's down on the ground and the gun's out in front of him. And that is my point, is when the court says the video, I don't want to make the same mistake, you know, or have the same mistake happen that happened below. It's very important to talk about which video and which of the particular officers, you know, captured the video because the law requires an individualized analysis in regard to the assertion of qualified immunity for each of the officers. Is your argument, after Baker, obviously, I think in this situation, I think it's safe to say that the court is allowed to consider these videos, right? Is your argument that it should not have done so here because they were not authenticated or that the contents of what the court saw is subject to unlike in other cases doesn't resolve the question? It's not authenticated. Great question, Your Honor. I see my time has expired. May I answer your question? It is not authenticated and in Baker, the court stated, quote, the video recording is a display of what happened, unquote. Well, one of the videos is a display of what happened in regard to one of the shooters and another video is, shows what another one, shows his perspective, but it's so critical to keep in mind that the videos that the court saw, especially the two that were submitted with the motion to dismiss that the court granted, were not captured by any of the defendants who asserted qualified immunity and the advantages are not only different. One of them doesn't even show the shooting and the other one, you can't see how long the shots continue while Thomas Winford is down on the ground, which is a critical moment in my client asserts because he was shot in the back twice because he died of wounds in his back, even though the officer shot at him from the front, which obviously provides for the conclusion that they continue to shoot while he was down on the ground without a gun in his hand. Thank you, Mr. Baker. You have three minutes for rebuttal. Mr. Freed. Good morning, Your Honors. May it please the court. My name is Michael Freed here on behalf of the Appellees. The primary issue presented in this appeal is whether seven police officers were reasonable in firing one brief, contemporaneous series of gunshots at an armed suspect who, after refusing repeated demands to disarm himself, raised his gun at several of those officers. The district court correctly concluded that the answer to that question is yes, and it reached that conclusion based on police body cam video footage that it incorporated by reference in the motion to dismiss. What about this authentication issue? What's your response to that? I have several responses to that, Judge Grant. First of all, if I'm understanding your question correctly, there's kind of two components to this. A, were the videos authenticated? B, is there authenticity in dispute? I'll answer both of those questions. The answer to the first question is yes, they were authenticated, and I'll tell you why. So what happened here was the defendants filed a motion to dismiss. They referenced two body cam videos in the motion to dismiss, asked the court to incorporate those videos by reference. The videos were then mailed, car copies, were then mailed to the district court. The docket shows that they were received by the district court several days later. A couple weeks later, the defendants filed a Certificate of Authenticity from the record custodian in Athens-Clarke County, and that Certificate of Authenticity says the attached records are true and accurate copy of body camera footage. Now, there's been some suggestion that that does not sufficiently authenticate the two videos in the motion to dismiss, and I will concede that the certificate could have been a bit clearer in terms of identifying what specific videos that it was authenticating, but the only two videos that the defendants, the appellees, had submitted to the court at that time were exhibits A and B to the motion to dismiss. So the only thing that the Certificate of Authenticity could be referring to are those two exhibits. So for the later documents that were attached to your response to the motion to amend the complaint, those have no Certificate of Authenticity, right? Yeah, I think that's correct, Your Honor, but my reading of the district court's order is that it relied on exhibits A and B to the motion to dismiss. The other videos that were attached to the response to the motion for leave to amend related to that issue, but in terms of the motion to dismiss the original complaint, the two videos that are relevant and that were reviewed by the court and relied on by the court were exhibits A and B to that motion. So getting back to the authenticity question, Judge Grant, and whether or not they're the authenticity of the two videos, and just to be clear, so there's no confusion, when I am talking about the videos, I am talking about exhibits A and B that were attached to the appellee's motion to dismiss. Judge Branch, as I think you noted, there has never actually been a challenge to the authenticity of those two videos, not in the district court, not in the appellate briefing, not in oral argument here today, has Ms. Swinford ever contended that those two videos are not what they are purported to be? And that's what authenticity is about. A piece of evidence is authenticated if it is what its proponent claims it to be. Ms. Swinford has never contested otherwise. So the videos were properly authenticated and there has not been a challenge to their authenticity. As I take it, her challenge is there are other videos that are necessary for the court to have a complete picture of what happened. What's your response to that? I understand that to be one of the arguments as well. And I think that completeness and authenticity are two different questions. The law says that a district court can incorporate videos by reference in ruling on a motion to dismiss if they are central to the plaintiff's claim, which isn't in dispute here, and B, they're undisputed. And undisputed means that there is a challenge to their authenticity. The fact that there may be other videos from other officers who were at the scene does not mean that the videos that the court considered were inauthentic. Those are two separate issues. The law does not require a defendant who wishes to have evidence incorporated by reference to submit all evidence that could potentially be incorporated by reference in order to have any of it considered. I guess the risk would be you submit one or two videos and the court looks at it and sees that there are limitations, that you cannot judge what happened, and so you lose your motion to dismiss. I agree with that. What if the court looks at a video and determines that it is positive? What ability does the opposing party have to show either the district court or this court that the district court is incorrect, that that video is not dispositive? I want to make sure I'm understanding your question correctly. When you say dispositive, I assume you're meaning dispositive as to the qualified immunity question? Yes. Well, I think if the district court looks at a video, a body cam video, and says there's not enough here for me to determine whether or not these officers should be granted qualified immunity. Right, but for the purposes of this hypo, I'm asking a different question, which is the district court says there is enough to be determinative and I find qualified immunity. In this hypo, which I'm not saying is your case, but in this hypo, there is out there evidence which shows that that video, in fact, is not dispositive of the question. What recourse does the plaintiff have in that situation? Well, if I'm understanding your hypothetical correctly, I would assume that the recourse could be that the plaintiff could submit the contradictory evidence to the court. I don't know why the plaintiff could not do so. A motion for reconsideration? Potentially, yes. If additional evidence came to light after the fact, I think a motion for reconsideration would be a different circumstance. And what's our standard of review for considering not whether the video was incorporated by reference, right, but whether the district court decision about what that video showed was proper, whether that video was dispositive of the issue? Whether it was dispositive of the motion to dismiss would be a de novo standard of review, if I'm understanding your question. Okay, so let's say that a video showed a person standing there with no weapon and the police walking up and shooting him and the district court concludes there is qualified immunity because that video was disproved. So, in your understanding of things, that video could come in and if the district court makes a wrong decision, a decision that is obviously incorrect, we could on appeal say, no, that video doesn't show what the court says it shows. So therefore, under a de novo review, we reverse the motion to dismiss and let the case go forward. Is that right? I think I would agree. So once the video is properly viewed by the district court, which it was here, we can look at what it actually does show. The video shows Thomas Swinford pacing outside of his car back and forth with his gun in hand. We can hear one officer over a loudspeaker trying to talk him down, saying, come talk to us, we can get you help, repeatedly telling him to put gun down. The video clip that was viewed by the court, that only goes on for three minutes or so, but the complaint alleges that it went on for 20 minutes. After some time, we see Mr. Swinford walk towards several of those officers. We can hear the officer on the loudspeaker begging with him, don't do it Thomas, don't do it, put the gun down. We then see Thomas raise his right hand with the gun in it and we hear one series of contemporaneous gunfire that lasted no more than four seconds. It's not, I mean, there are some shots that are later than the beginning ones, right? Yeah, I think that you can hear, I think the video you can pick out, maybe two or three shots at the very end. And plaintiff alleged that at least one officer stated they fired because another officer fired, right? I believe so. So doesn't that get into the reasonableness of at least one of those officers actions? I mean, that officer may not have been perceiving a threat to himself or to others. He was just firing because another officer fired. And I mean, isn't that something that should have been explored more in discovery? Well, I think this goes, I think your question goes to the overall approach that Ms. Swinford is taking to this issue here. What she is asking this court to do, and I think your question, it kind of falls under this umbrella, what she is asking this court to do is to dissect this incident on a split second by split second, shot by shot, forensic basis with the use of 20-20 hindsight. And we know from years of precedent that in ruling on qualified immunity, judges are not supposed to judge the reasonableness of an officer's conduct with the benefit of 20-20 hindsight. They are instructed to view the officer's conduct through what they were experiencing at the scene. Right, but for an officer to be fired because another officer fired, that's not hindsight, that's him, this officer explaining his conduct. And is that reasonable to simply fire because someone else fires? I'm not trying to avoid your question here, your honor, but I think that it's important to clarify some of the factual record here. I would agree, and that's why. And perhaps this will shed some light on it. Throughout Ms. Swinford's brief, and here today in oral argument, but throughout her brief, she cites two allegations made in her proposed amended complaint. Anytime we see a citation to document number 12 in the record, it's to the proposed amended complaint. This allegation that Mr. Swinford was dropped by the first shot, that's not in the original complaint. I think, if I'm not mistaken, and I don't want to say this affirmatively because I'm going by memory here, but I think the allegation that you are talking about is one of these allegations that was brought up in the proposed amended complaint. The proposed amended complaint is not the operative complaint here. The operative, because the proposed amended, she was never granted leave to amend. The operative complaint for the purposes of the motion to dismiss is the original complaint. So what we have on the motion to dismiss is the two videos and the allegations in the original complaint. Any allegations that were made in the proposed amended complaint are not relative to the motion to dismiss the original complaint. Does that get it? Yes, but then why shouldn't the district court have let her amend her complaint? Because the video shows that it would be futile. The video, if we apply the facts shown in the video to this court's precedent, to the Supreme Court's precedent, there is no case in which we see one series of contemporaneous gunfire from officers in which they were denied qualified immunity. The only two cases that Ms. Swinford points to, the Hunter case and the Robinson case, in both of those cases, there were two series of gunshots. We had an initial series of gunshots. We had a pause during which the officers could have realized that the suspect was no longer a threat. And then we have a second series of gunshots. And in both of those cases, the court held the officers were entitled to qualified immunity as to the first round, but not the second round. And both of those cases came out after this incident, correct? That is correct. That's another important point to point out, Your Honor. But even if those cases, you know, could clearly establish a violation here, they actually support the grant of qualified immunity here because the facts here align with the first series of shots in both of those cases because we only have one series of shots. We don't have a series of shots followed by a pause in which the officers may have determined that Mr. Swinford was no longer a threat and then a second series of shots after that. If we look at the Supreme Court's case in Plumoff, we see a case where there was multiple shots over a course of 10 seconds. Qualified immunity was granted there. And I may be venturing into the amended complaint as well. And so pardon me if I am, but what do we make, if anything, of the fact that he was shot some in the back, which clearly, I guess, clearly indicates after he hit the ground, he was shot? I would dispute that it clearly indicates that, Your Honor. And this is kind of going beyond the record in the amended complaint. But I say I'm just... But there wasn't, there weren't officers positioned behind him because then you would set up a risk to officers. So how does he get shot in the back? Well, I don't know, Your Honor, but I think the important thing to note again is that there is no case that I'm aware of from this court or from the Supreme Court in which the court denied qualified immunity based on this kind of forensic analysis, where we have a span, multiple shots fired, 21 shots over four seconds, five shots per second, where the court denies qualified immunity by conducting this kind of investigation. Ms. Swinford has not carried her burden of showing a case that clearly establishes a violation of the Fourth Amendment under these facts. To your knowledge, do any of the available videos span beyond the time of those four seconds of shots? Yes, actually, the video that the court, I think it's video A, Exhibit A, actually does span beyond that. Right. And we do not hear any shots after that, correct? That's correct. Well, what we see is the initial four-second series of shots, and then we see a group of officers who are approaching Mr. Swinford behind a shield. They're able to locate the gun, separate the gun from him, and then they detain him. Because the body cam footage is running until the officers reach the fallen Mr. Swinford, correct? Yes, that's right. Because, at least from the video, it appears that there's some confusion as to whether he is still a threat because they don't know where the gun is. That's correct. Okay. All right, thank you. Thank you, Your Honor. Mr. Baker, you have three minutes. Thank you so much, Judge. They did know what the gun is, where the gun was, Your Honor, because my client pled that in the complaint based on the admission by McElmaine, the first officer who shot and said that the gun was four to five feet away from him, and he was motionless and wasn't reaching for it. And my client... Is this the complaint or amended complaint? Your Honor, I think it's the amended complaint, and I'm really glad you pointed that out. Because the amendment, it's very important that there was a motion to amend filed before the was decided because the issue for futility is whether the complaint, quote, as amended could provide a claim. And the futility analysis is such a difficult bar to reach because it's not whether the claim has been pled to put them on notice sufficiently, but whether it could be. And, of course, you want to look at the amended complaint for that. But do you, do you assert that any shots were made outside of this four-second time period? Absolutely not. And I'm so sorry if I didn't explain that well. What I am, what my client alleges is that if you, is exactly what you see in William Harmoning's report, the expert witness who generated a report that's attached to the consideration. And Mr. Harmoning breaks down the shots by each officer and says that they had enough time to stop shooting. And he goes officer by officer, video by video. And again, I hope the court will consider that, especially the officer who's behind that brick wall, who you can see so clearly that the, that Mr. Swinford was down, face down on the ground, motionless, and he just So, I understand, I understand that you've, you've got the expert report breaking all of this down. This is a four-second time frame. Do you have any case that says an officer is not entitled to qualified immunity when the shots are fired in that initial four-second rate? I haven't found one. So, how is it clearly established? Yes, because the threat has to be immediate. And while the court seems to be leaning toward, while some may conclude that, that four seconds later after the first shot goes off is still immediate, that's it. That's not the court's decision to make or mine, or my expert witness for that matter. That is a jury question because, you know, that is a factual issue about what immediacy is. And the entire point that my client, may I finish my response, Your Honor? Briefly wrap it up, please. Yes. Thank you. The key here is this. At summary judgment, these officers may be entitled to qualified immunity. I do not know. But what I do know is that my client did not have a fair opportunity below to develop any evidence of any kind. And that is, that violates the Seventh Amendment to the U.S. Constitution, Rule 38 of the FRCP, which holds the right to a jury trial inviolate, and Rule 12, which says that if the court is going to consider, and this is what should have happened, this goes to your question about disqualification. You've gone past wrapping up. So, thank you. We thank you both. We have your case under advisement. And court is in recess for the day.